

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

April 6, 1971

Hon. Charles A. Stewart, Chairman
Texas Fine Arts Commission
825 Brown Building
Austin, Texas 78701

Opinion No. M-828

Re: Whether, pursuant to
Article 6144g, Vernon's
Civil Statutes, the Texas
Fine Arts Commission has
authority to publish a
newsletter relating to
pending legislation, and
related questions.

Dear Mr. Stewart:

Your recent letter requesting the opinion of this office concerning the referenced matter states, in part, as follows:

"As part of our duties and responsibilities as set forth in Section 3 of Article 6144g, we publish a newsletter to civic art councils and interested individuals throughout the state informing them of art and cultural activities. At the present time, S.B. 230 is on the floor of the Senate. It is concerned with the limited use of art on public buildings to be built with state funds. Our questions are as follows:

"1. May we publish a newsletter, printing the entire bill and asking the recipients to read the proposed (legislation) and to react either for or against it?

"2. May I, as Chairman, comment that this bill is supported by the Texas Society of Architects and the Texas Fine Arts Commission?

"3. May I give a personal opinion as the Chairman that the bill, in my opinion, has merit?

"4. As a matter of information, may we include a list of the House and Senate members?"

The Texas Fine Arts Commission was established by Article 6144g, Vernon's Civil Statutes, which provides, in part, as follows:

-4011-

"Sec. 3.   The duties and responsibilities of the Commission shall be:

"a.   To foster the development of a receptive climate for the fine arts that will culturally enrich and benefit the citizens of Texas in their daily lives, to make Texas visits and vacations all the more appealing to the world and to attract to Texas residency additional outstanding creators in the field of fine arts through appropriate programs of publicity and education, and to direct other activities such as the sponsorship or art lectures and exhibitions and central compilation and dissemination of information on the prograss of the fine arts in Texas.

"b.   To act as an advisor to the State Building Commission, State Board of Control, Texas State Historical Survey Committee, Texas State Library, Texas Tourist Development Agency, State Highway Department and other state agencies to provide a concentrated state effort in encouraging and developing an appreciation for the fine arts in Texas.

"c.   To act in an advisory capacity relative to the creation, acquisition, construction, erection or remodeling by the state of any work of art.

"d.   To act in an advisory capacity, when requested by the Governor, relative to the artistic character of buildings constructed, erected or remodeled by the state.

"Sec. 4.   The Commission shall have power:

"  .  .  .

"c.   To conduct research, investigations, and inquiries as may be necessary so as to inform the Commission of the fine arts development in Texas.

"  .  .  .

"Sec. 5.   The Commission may accept on behalf of Texas such donations of money, property, art objects and historical relics as in its discretion

shall best further the orderly development of the
artistic and cultural resources of Texas.  Appro-
priations may be made by the Legislature to the
Commission to carry out the purposes of this Act.
All funds shall be subject to audit by the State
Auditor."  (Emphasis added.)

Section 5 of Article V of House Bill 2, Acts of the 61st
Legislature, 2nd C.S., 1969 (General Appropriations Act for the
biennium ending August 31, 1971), provides, in part, as follows:

"None of the monies appropriated under this
Act shall be used by any agency of the State Gov-
ernment for the purpose of publicizing or directing
attention to any individual official or employee of
any agency of the State Government.

". . .

"The policy and restrictions set out in this
Section shall not be interpreted to prevent the
head of any agency of the State, when he deems
it necessary or desirable in the public interest,
to issue through any of such agency's officials or
employees any statement or information respecting
the work, legal responsibilities, or activities of
such agency.  Such statement shall be issued, or
such information imparted, in the name of the agency
of the State but shall be issued under or have at-
tached thereto the name of the official or employee
authorized to issue the same."

The powers and duties of public officers of this state,
such as The Texas Fine Arts Commission, are prescribed by the
provisions of the Constitution and statutes relating to the
particular officers.  They have the authority only to perform
those acts as are consonant with those duties imposed upon them
by law.  47 Tex.Jur.2d 138, Public Officers, Sec. 105.  Also,
it is stated in this text under Section 110, page 145, as follows:

"It is equally well settled, however, that
a law that confers a power or imposes a duty on
an officer or board carries with it by implication
the authority to do such things as are reasonably
necessary to carry into effect the power granted
or the duty imposed.  Thus, power to do certain

work or to accomplish a certain result that cannot otherwise be accomplished implies the authority to employ such agents as may be reasonably necessary to accomplish the work or purpose specified, and to engage them for such length of time as is reasonably necessary."

In Attorney General's Opinion No. M-439 (1969), this office upheld the authority of the Secretary of State to publish a newsletter or bulletin at state expense in connection with the statutory duties imposed upon him in the dissemination of instructions, forms, directives, and statutory enactments, but denied the authority otherwise, in the absence of statutory authority, to publish a newsletter or bulletin concerning matters unrelated to his statutory duties.

From the nature and scope of the statutory duties and responsibility imposed upon the Texas Fine Arts Commission to foster the development of fine arts and to promote such development "through appropriate programs of publicity and education," including the "dissemination of information" on the progress of such fine arts program, we have concluded that the publication of an appropriate newsletter in this connection is authorized. Within the newsletter, if it is properly found to be pertinent and relevant to the promotion of such a fine arts developmental program, we find nothing in the law that would prohibit making reference to proposed legislation dealing with and pertinent to this project or undertaking, including the publication of the legislation. Consequently, we answer your first question in the affirmative.

However, we must answer your remaining three questions in the negative. With reference to questions two and three, we believe that either the action showing that a bill is supported by the Texas Society of Architects or the Texas Fine Arts Commission or the action of the Chairman of the Commission giving his personal opinion as to its merits would be illegal and against public policy. An agency of the state is precluded from expending public funds either to secure or defeat legislation. See Graves & Houtchens v. Diamond Hill Independ. School Dist., 243 S.W. 638 (Tex.Civ.App. 1922, no writ); Attorney General's Opinion No. V-464 (1947). Therefore, it is our opinion that the newsletter must refrain from any partisan activity either for or against pending bills. This does not preclude the Commission from inserting views and expressions from the public concerning the merits or demerits of fine arts proposals in connection with their responsibilities and mandate to foster, promote, and develop

the fine arts field in Texas, which includes the finding of the proper solutions to those problems encountered.  The members of the Commission no doubt have a duty to become informed; and when the Legislature calls upon them to testify or supply information on proposed legislation, they have the responsibility of informing the Legislature concerning this information and giving their views thereon when so requested.

In answer to your fourth question, the listing of the names of all the Senators and Representatives in the newsletter is, in our opinion, not a legally relevant or appropriate expenditure of funds.  However, we do not believe it would be improper to invite the readers of the newsletter to give their views and thoughts on the fine arts legislation to their respective legislators.

## S U M M A R Y

Pursuant to Article 6144g, Vernon's Civil Statutes, the Texas Fine Arts Commission may publish a newsletter in which is printed the entire text of a pending Senate bill relating to the fine arts, and solicit the comments of the newsletter's readers on such bill.

However, the Commission may not comment that the bill is supported by certain interest groups, the Commission's Chairman may not give his personal opinion regarding the merits, if any, of the bill, and a list of members of the House and the Senate may not be printed in the newsletter.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

By _____
NOLA WHITE
First Assistant

Prepared by Austin C. Bray, Jr.
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
R. D. Green
S. J. Aronson
Jerry Roberts
Camm Lary

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant